Ronald G. **CONNOLLY**, M.D., et al., Plaintiffs,

v.

Russell J. **LABOWITZ**, M.D., et al., Defendants.

Superior Court of Delaware, New Castle County.

Submitted: Aug. 12, 1986.
Decided: Sept. 12, 1986.

---

James S. Green, of Connolly, Bove, Lodge & Hutz, Wilmington, for plaintiffs.

Edmund N. Carpenter, II and John A. Parkins, of Richards, Layton & Finger, Wilmington, for defendants.

TAYLOR, Judge.

Defendants[1] have moved for a ruling in advance of trial with respect to certain evidentiary matters.

## I

The first issue is the extent of Dr. Connolly's burden of proof with respect to the falsity of the alleged statements of Dr. Labowitz. Dr. Labowitz cites *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. ——, 106 S.Ct. 1558, 89 L.Ed.2d 783 (1986) in support of that position. *Hepps* involved a libel action brought against a newspaper publisher. The state court held that the plaintiff need not show falsity of the statement and that plaintiff need only show fault on the part of the newspaper. The United States Supreme Court reversed the state court decision, holding (at page ——, 106 S.Ct. at page 1564):

> To ensure that true speech on matters of public concern is not deterred, we hold that the common-law presumption that defamatory speech is false cannot stand when a plaintiff seeks damages against a media defendant for speech of public concern.

Dr. Labowitz contends that this Court should extend the *Hepps* holding to non-media defendants. This contention rests on writings of Mr. Justice Brennan in a concurring opinion in *Hepps* and a dissenting opinion in *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985) in which Justice Brennan noted that six members of the Supreme Court had agreed that defamation rights of institutional media are no greater or no less than rights of individ-

---

1. The named plaintiffs are the individual plaintiff and his professional corporation; the named defendants are the individual defendant and his professional corporation. For simplicity, the named plaintiffs are referred to as Dr. Connolly, and the named defendants are referred to as Dr. Labowitz.

uals. Notwithstanding those comments, the *Hepps* Court expressly limited its declaration to media defendants. *Hepps*, being the Supreme Court's most recent pronouncement on this subject will be followed here.

In addition to the limitation discussed above, *Hepps* requires that the subject matter be of "public concern".[2] Dr. Labowitz points out that under *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, supra, quoting from *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), the determination of whether a matter is of public concern must be determined "from the content, form and context" of the whole record. Under this analysis Dr. Labowitz contends that the performance and capability of a doctor providing medical care is a matter of concern to the residents of this State and hence is a matter of public concern.

The underlying consideration is whether allowing recovery in accordance with the traditional standard in a libel action may have a chilling effect on the "unfettered interchange of ideas for the bringing about of political and social changes desired by the people". *Dun & Bradstreet*, 472 U.S. at 759, 762, 763, 105 S.Ct. at 2945, 2947, 86 L.Ed.2d at 602, 605.

*Dun & Bradstreet* recognizes that "speech solely in the individual interest of the speaker and its specific business audience" does not qualify as a matter of public concern. In this case the alleged statements were made only to certain members of the medical profession and concerned only the conduct of a single practitioner.

Dr. Labowitz cites 24 *Del.C.* § 1768 as demonstrating the State's expressed interest in that subject. The qualification and licensing procedure which the legislature has provided evidences a public concern for the quality of health care services which should be available for the public. However, it has provided a mechanism for assuring proper medical service, 24 *Del.C.* Ch. 17. It has further provided that the functioning of the peer review mechanism shall be private and not subject to public examination. 24 *Del.C.* § 1768. In view of that statute, I conclude that the dissemination of information concerning the qualifications and performance of a particular physician is not a matter of public concern within the special protection accorded to matters of public concern under the First Amendment of the United States Constitution. Further, I cannot accept the proposition that every negative statement made by a physician[3] concerning the professional conduct of another physician is entitled to protection as a matter of public concern.

I conclude that First Amendment considerations do not require a departure in this case from the traditional standards applicable to libel and slander.

## II A.

Dr. Labowitz's second contention is that the letter written by Dr. Labowitz and his associate Dr. Newman and published in the *Delaware Medical Journal*, which criticized the research which Dr. Connolly had reported in an earlier article in that magazine, should be held not to be defamatory. Dr. Labowitz's position is that the letter cannot be defamatory because it is an expression of opinion. This oversimplifies the consideration. The letter contains statements of both fact and opinion. The first paragraph merely identifies the subject of the letter, namely, Dr. Connolly's prior article, without commenting about the

---

2. The Delaware Supreme Court in *Gannett Co., Inc. v. Re*, Del.Supr., 496 A.2d 553 (1985), and this Court in *Re v. Gannett Co., Inc.*, Del.Super., 480 A.2d 662 (1984) had occasion to consider the United States Supreme Court decisions in the context of the related "public figure" standard.

3. According to the U.S. Bureau of the Census, *Statistical Abstract of the United States: 1985* (105th edition) Washington, D.C., 1984, Table No. 159, p. 103, as of end of year 1981 there were 420,890 active non-federal physicians in the United States and of this number only 991 active non-federal physicians in the State of Delaware.

article. The next two paragraphs purport to state medical facts. The fourth and fifth paragraphs state opinions of the writers.

Dr. Labowitz contends that the entire letter should be viewed as an expression of opinion and as such should be isolated from libel under *Slawick v. News-Journal Co.*, Del.Supr., 428 A.2d 15 (1981).

■ Dr. Connolly contends that the letter implies existence of undisclosed defamatory facts and the issue of the libelous nature should be left to a jury determination. Dr. Connolly cites *Slawik* and *Good Government Group v. Superior Court*, Cal.Supr., 22 Cal.3d 672, 150 Cal.Rptr. 258, 586 P.2d 572 (1978) in support of his contention. *Slawik* does not support the apparent contention of Dr. Connolly that the matter should go to the jury without being initially tested by the Court. In *Slawik* the Delaware Supreme Court accepted the principle stated in Section 614 of the *Restatement (Second) of Torts*, comment b that:

> The Court determines whether the communication is capable of bearing the meaning ascribed to it by plaintiff and whether the meaning so ascribed is defamatory in character.

*Good Government* (a California case) is not contrary to *Slawik*. It merely holds that where the Court cannot determine as a matter of law whether a statement is a statement of opinion, the determination of whether the statement is fact or opinion should be determined by a jury. The *Slawik* test will be applied.

The analysis here starts with the assumption that the facts set forth in the second and third paragraphs of the letter are supported by the publications cited in the footnotes in the letter. The Court has not been provided with the cited publications or with expert testimony on that subject. Accordingly, Dr. Connolly's contention that the publications were misrepresented by Drs. Labowitz and Newman in their letter will not be taken up at this time. The last two paragraphs of the letter set forth the opinions of the writers as

to the appropriate method to be followed in conducting such study and the risk involved in using a combination of drugs, and particularly in using Prolixin.

■ Dr. Connolly also contends that the letter implies the existence of undisclosed defamatory facts. Where an opinion suggests the existence of undisclosed facts giving rise to the opinion, such opinion may be found to be defamatory. *Slawik*, supra. The purported implications are that Dr. Connolly's patients were subjected to drugs with dangerous side effects, that the literature warned against use of Prolixin and that Dr. Connolly recommended use of Prolixin by general practitioners. Dr. Connolly asserts that the truth of the matter is that the patients were carefully supervised, not treated for a lengthy period, and enjoyed relief from persistent pain. None of these facts were disputed by the letter. The emphasis of the letter was the risk of side effects. It carried no implication that defamed the results which Dr. Connolly's article described.

■ Dr. Connolly also contends that the caption on the letter as printed in the magazine, which reads "Appropriate Treatment of Fibromyositis" implies that Dr. Connolly's treatment was inappropriate. It is asserted by Dr. Labowitz that the caption was added by the magazine and was not a part of the letter. In the absence of a showing that Dr. Labowitz caused the caption to be affixed, Dr. Labowitz is not chargeable for it.

■ The present state of the art of healing has derived in part from the controlled pioneering use of substances and the reporting of the results of such use to the medical profession. The techniques to be used and the limitations to be applied are proper concerns of members of the profession. The exchange of opinions and information is an appropriate aid to those who would pursue such studies in the future or who might be governed by prior studies. Broad latitude must be accorded to those who wish to express opinions—particularly

where those opinions are founded upon established facts.

The subject here involves a judgmental decision concerning medical experimentation. Dr. Connolly reaches one conclusion and Dr. Labowitz reaches the opposite conclusion. Subject to the assumption stated above, and applying the *Slawik* standard, I find that the letter is not defamatory and hence that its publication did not defame Dr. Connolly under the applicable legal principles.

## II B.

■ The Court now turns to the admissibility of evidence of the letter under Dr. Connolly's claim for interference with plaintff's professional and business relations. The elements for establishing a claim for tortious interference have been described as follows:

[A] showing of deliberate interference with a prospective business opportunity requires (a) the reasonable probability of a business opportunity, (b) the intentional interference by defendant with that opportunity, (c) proximate causation, and (d) damages, all of which must be considered in light of a defendant's privilege to compete or protect his business interests in a fair and lawful manner, *Bowl-Mor Company, Inc. v. Brunswick Corp.*, Del.Ch., 297 A.2d 61 (1972), and *Regal Home Distributors, Inc. v. Gordon*, Del. Super., 66 A.2d 754 (1949).

*DeBonaventura v. Nationwide Mut. Ins. Co.*, Del.Ch., 419 A.2d 942, 947 (1980).

On appeal, this description was quoted and then approved in a condensed version as follows:

As we read the chancellor's opinion, he essentially concluded that plaintiffs had failed to establish that defendant's activities were the proximate cause of their damages and that defendant had shown that its activities were a fair and lawful means of protecting its own business interests and the economic interests of its insureds.

*DeBonaventura v. Nationwide Mutual Ins. Co.*, Del.Supr., 428 A.2d 1151, 1153 (1981).

Applying the *DeBonaventura* test, I conclude that a single instance of opinion comment about a physician's research and treatment is permissible in furthering the interests of the profession and the patients and does not constitute evidence of interference with the business and professional relationship or opportunity of Dr. Connolly. Cf. 4 *Restatement of Torts (Second)* § 767.

## II C.

The admissibility of this evidence must also be considered in the light of Dr. Connolly's charge of conspiracy. The complaint alleges that the objective of the conspiracy "is to improperly monopolize and control the treatment of numerous patients throughout Delaware and the professional practice of Rheumatology." (Paragraph 9). In addition, the conspiracy charge will be considered with respect to the specific allegations of defamation and business interference.

■ Civil conspiracy is the combination of two or more persons or entities for an unlawful purpose or for the accomplishment of a lawful purpose by unlawful means, resulting in damage. *Weinberger v. UOP, Inc.*, Del.Ch., 426 A.2d 1333, 1348 (1981), *rev'd on other grounds*, Del.Supr., 457 A.2d 701 (1983); 15A *C.J.S.* Conspiracy § 1(1), p. 596; 16 *Am.Jur.2d* Conspiracy § 49, p. 267; *Earl R. Nutt v. A.C. & S. Co., Inc.*, Del.Super., 517 A.2d 690 (1986). Civil conspiracy is not an independent cause of action in Delaware. *Phoenix Canada Oil Co. v. Texaco, Inc.*, D.Del., 560 F.Supp. 1372, 1388 (1983). To be actionable a civil conspiracy must embody an underlying wrong which would be actionable in the absence of the conspiracy. "The gravaman of an action in civil conspiracy is not the conspiracy itself but the underlying wrong which would be actionable absent the conspiracy." *McLaughlin v. Copeland*, D.Del., 455 F.Supp. 749, 752 (1978), *aff'd* 3d Cir., 595 F.2d 1213 (1979).

With respect to the alleged conspiracy to monopolize, Dr. Labowitz points out that if this charge seeks to assert a violation of the Federal Anti-Trust Laws this Court lacks jurisdiction to entertain it because the federal courts have exclusive jurisdiction of such claims, citing 4 *Callman Unfair Competition, Trademarks & Monopolies* § 23.13, and if it seeks to assert a claim under the Delaware Antitrust statute only the Court of Chancery has jurisdiction of such claims, citing 6 *Del.C.* § 2110. These contentions are supported by the above citations. Dr. Connolly has cited no authority in support of the conspiracy to monopolize claim. Absent legal support for such claim, evidence will not be permitted in support of that claim.

Since a conspiracy may be proved by circumstantial evidence as well as by direct evidence, reasonable latitude may be permitted in establishing facts from which the conspiracy may be inferred. *United States v. L.D. Caulk Company*, D.Del., 126 F.Supp. 693, 702 (1954). The Court has held above that the publication of the letter in the medical magazine was not an actionable wrong. Unless Dr. Connolly can show that the publication of this letter aids in establishing a conspiracy involving one of the actionable wrongs, it will not be permitted in evidence.

### III A. & B.

Dr. Labowitz's next subject involves an incident which occurred in 1979 in which Dr. John Levinson, a gynecologist, requested Dr. Connolly to certify to the medical need for an abortion. After Dr. Connolly refused to participate in the abortion matter, Dr. Labowitz provided the certification which resulted in the abortion. After Dr. Connolly refused to certify as Dr. Levinson had requested, Dr. Levinson filed a complaint against Dr. Connolly with the New Castle County Medical Review Board charging him with patient abandonment.

Dr. Labowitz seeks to bar evidence concerning this episode on the ground that a claim for libel or slander is barred by the two-year limitation in 10 *Del.C.* § 8119 because suit was filed (August, 1983) more than two years after the occurrence in 1979.

Dr. Connolly contends that this incident is merely part of an ongoing scheme or conspiracy in which the statute does not begin to run until the conspiracy ends. Dr. Connolly cites *Oakes v. Gilday*, Del.Super., 351 A.2d 85 (1976). *Oakes* was a medical malpractice case in which defendant had performed a series of treatments which resulted in injury to plaintiff. Some of the treatments occurred more than two years before suit and some occurred less than two years before suit. Based on the inability to establish the particular treatment which actually caused the injury and the possible applicability of the "inherently unknowable" concept which tolls the statute of limitations in medical malpractice suits, the Court declined to find that the suit was barred by the statute of limitations. The holding in *Oakes* does not apply here because this case does not involve uncertainty as to when the alleged tort occurred or lack of knowledge of existence of the tort.

Where there is a succession of wrongful actions done in pursuance of a conspiracy, the statute of limitations commences as to each wrongful act at the time that act occurred. *Glassberg v. Boyd*, Del. Ch., 116 A.2d 711 (1955). It will be noted that *Glassberg* held that the applicable statutory period in the case of conspiracy is three years. Since the occurrence was in 1979 and suit was filed in 1983, this claim is barred whether § 8106 or § 8119 is applied.

### III C.

The Court has noted above the admissibility of circumstantial evidence to support a conspiracy. The Court has held above that this occurrence is not an enforceable actionable wrong. Unless Dr. Connolly can show that this occurrence aids in establishing a conspiracy involving one of the enforceable actionable wrongs, it will not be permitted in evidence.

## IV A.

▮ Dr. Labowitz's next subject involves a patient referral which Dr. Labowitz made to Dr. Connolly in connection with a fibromyositis study which Dr. Connolly was conducting at that time. When Dr. Connolly examined the referred patient he determined within a few minutes that she had a disease which was mutually exclusive of the disease which Dr. Connolly was studying and rejected the patient from the study. Dr. Connolly filed a charge against Dr. Labowitz with the ethics committee for having referred the patient who was not suffering from fibromyositis.

Dr. Connolly contends that Dr. Labowitz used the charge which Dr. Connolly had filed, to prevail on the ethics committee to bring Dr. Connolly before that committee, with the result that Dr. Connolly was told to have a psychiatric examination. Dr. Labowitz contends that since this is a claim for damages for an event which occurred in February, 1981 and this suit was filed in August 1983, it is barred by two-year statute of limitations.

The Court's statute of limitations holding in section III A & B precludes Dr. Connolly from pursuing this as a separate claim for damages. I conclude that evidence of Dr. Labowitz's patient referral is not admissible as a claim in connection with Dr. Connolly's general claim for defamation.

## IV B.

▮ It has been noted above that one of the elements of a cause of action for business or professional interference is that the alleged interference must have caused financial damage to the claimant. The only financial damage from this occurrence is the few minutes which it took for Dr. Connolly to determine the true nature of the patient's condition. For purposes of this suit, that will be viewed as de minimis. However, Dr. Connolly may pursue this claim for the value of the time spent in making his diagnosis.

▮

## IV C.

The use of evidence to support an inference of conspiracy has been discussed above. Whether Dr. Connolly can rely on this occurrence to aid in establishing a conspiracy involving one of the enforceable actionable wrongs cannot be resolved from the limited factual submission made to the Court.

## V

▮ Finally, Dr. Labowitz seeks to bar evidence that during the discovery phase of this suit Dr. Labowitz has sought to require Dr. Connolly to undergo a psychiatric examination. Each of the attempts to obtain a Court order requiring such examination has been denied by the Court. Dr. Connolly contends that evidence of Dr. Labowitz's psychiatric motions should be considered by the jury.

With respect to representations and statements made in pleadings and motions, this Court has held that such matters are protected from claims based on such statements and representations. *Nix v. Sawyer*, Del.Super., 466 A.2d 407 (1983). Cf. *Short v. News-Journal Company*, Del. Supr., 212 A.2d 718 (1965). Under the holdings of those cases such evidence is not admissible.

Any relief which Dr. Connolly might be entitled to receive during the pendency of this suit should be based on *Superior Court Civil Rule* 11. That Rule permits the Court to impose appropriate sanctions upon a party or attorney who violates the obligations imposed by that Rule. Such sanctions are to be determined by the Court and not by the jury which determines the merits of plaintiff's cause of action asserted in the complaint.

Any permissible claim based on occurrences in the course of this litigation should be barred as a claim in this suit. First, such claim has not been alleged in the complaint, second, the allegations requisite to such claim have not been set forth in the complaint, cf. *Nix v. Sawyer*, supra, and third public policy does not countenance the commingling of issues growing

out of the in-fighting in the course of this litigation with the issues of the case as set forth in the complaint and answer. The policy barring a party from litigating matters which have happened in the course of a suit together with the original subject matter of the suit is recognized in the field of wrongful use of civil proceedings, cf. *Restatement of Torts (Second)* § 674, and in the field of malicious prosecution, cf. *Nix v. Sawyer,* supra; *Kaye v. Pantone,* Del. Ch., 395 A.2d 369 (1978); *Alexander v. Petty,* Del.Ch., 108 A.2d 575 (1954). That policy is to be applied here.

Based on the foregoing, testimony concerning Dr. Labowitz's efforts in this case to have Dr. Connolly undergo physchiatric examintion will not be permitted in this trial.